Salvana v. New York State Department of Corrections Salvana v. New York State Department of Corrections and Community Supervision He's speaking to his boss, his boss's boss. This is not a situation like in Matthews. I know my adversary cites the Matthews repeatedly. In Matthews, there was a divide between the precinct commander and the speaker, among other things. In that case, the focus of the speech was on the matter of public concern, not on how it affects my ability to do my job. But you could have a situation where your superior is so far removed from you that you, the speaker, would be indistinguishable from John Q. Citizen. That's not what we have here. The chief medical officer is well aware of who Dr. Salvana is because of the role he occupies. As Dr. Salvana himself characterizes it, he is the highest medical authority at the Doc's Medical Center that treats the sickest patients. That is a position whose opinion is going to carry great weight on medical issues, and it's evident from this record. The chief medical officer doesn't fob him off, doesn't say, go take it to your boss, Dr. Dinello. He engages with Dr. Walsh-RMU visiting it, and then shortly after that reaches a compromise. All of this tends to show that Dr. Salvana was not only speaking as an employee, but he didn't want to be regarded as a citizen. He wants them to be reminded. He is the medical director of the Walsh-RMU because it inures to his benefit. So while this policy might have been boneheaded, maybe everything Dr. Salvana says is accurate, we're not here to talk about the policy. We're not here to defend it. We're here to talk about the perspective from which Dr. Salvana spoke, and it's clear. He's not addressing Doc's because Doc's is a government entity. He's addressing Doc's because Doc's is his employer. Now, I would be remiss if I didn't bring up our alternative defense of qualified immunity, even if this court had some questions. Qualified immunity would provide an alternative defense. Dr. Salvana's point is well taken in his reply brief. It's not available in all existing cases because sometimes the question is do you retaliate? We know retaliation is bad. Here the question is whether as a matter of law this speech is protected in the first place, and we would contend that all of the cases, for the reasons that I was just elaborating on, would tend to favor the defendants. We've cited cases from out of circuit like King in the 11th century, which are actually analogous that favors Dr. Salvana. He cites to Montero, which of course Montero was a qualified immunity case. It involves somebody speaking in a union capacity. Matthews, the focus of the speech was completely different. He was protesting the quota policy based on its effect on the community, not on his effect on his own job duties. It happened to affect his job duties. Here we have the reverse. I would also like to point out that in Weintraub, Dr. Salvana tries to distinguish that as not involving a matter of public concern, but that is not what happened in Weintraub. I believe the site is page 201. This court expressly notes, we're not going to get into public concern because we can decide this case on the employee's speech element. So trying to distinguish it on the ground that it doesn't involve a matter of public concern is reading far too much into that case. And finally, at the end of the day, as was discussed slightly earlier, Dr. Salvana is not without recourse, even if the First Amendment isn't available to him. He could pursue claims under state whistleblower law, and to the extent that he would claim that a ruling for defendants in this case somehow chills speech from medical professionals, that's exaggerated. As Judge Sullivan pointed out, these inquiries are fact-driven. They're fact-driven and frankly, they're delicate. Those three inputs that I was discussing before, your duties, the content of the speech, the setting in which it was spoken, if you make small alterations to any of those inputs, that could alter the analysis. I'm not going to concede or speculate whether it would be dispositive, but if this was a different physician who occupied a different role, if this was Dr. Salvana writing a letter to the New York Post, if this was Dr. Salvana phrasing his opposition in a way that was different from what he actually said, which is that this is making it more difficult for me to be a doctor, that could alter the balance and we might have a different case. We're here to discuss the facts of this case and on the facts of this case, the district court got it right. Thank you. Thank you. Briefly a few points. I want to refer the court to plaintiff's appellant page 238, which is the job description for Dr. Salvana. So when counsel says that Dr. Salvana had an administrative role, I want the court to be aware that the job description is there and his only administrative role was with respect to supervising physicians under his supervision. There was no authority for Dr. Salvana to either formulate, comment, or provide feedback on policy of their supervisors. With respect to the New York State law claim, there was a question asked. The case has not been settled as of now, so there is no resolution to it. It may or may not go to trial. With respect to the comment about the New York Post. It would provide him all the relief that he seeks. You want to provide all the relief because the New York State statutory whistleblower statute does not provide for emotional damages, which is part of what is being claimed in this action in federal court. With respect to the comment of the New York Post, Matthews, the complaint about the policy at issue was made to his commanders, like Dr. Salvana. There was no need to write a letter to New York Times or New York Post in order to have the speech protected. But the point I think there is that the letter written there was no different than a letter written from a private citizen. It was to the actor on a policy that affected much more than just the job of the letter writer. Yes, and as the Supreme Court has pointed out, and the president of this court, is that what matters is if there was a channel that is the same or similar. It doesn't have to be the same channel. And in this case, the record shows that family members and inmates had a similar channel to complain to supervisors all the way up to Albany about their mistreatment and patient treatment. So they have the same civilian analog to make those complaints. So in conclusion, protected speech does not lose its status as protected speech because it concerns medical care and physicians provide medical care. There is no profession exception to protected speech. Like Garcetti instructs us, what you need to look at is whether the speech is part and parcel of the ordinary, everyday duties of the job, not whether it concerns those duties. Dr. Salvana's complaint about policy was not part and parcel of his everyday job duties. Speech can concern duties and still be protected, like in Jackler v. Barn, Matthews v. City of New York, and Montero v. City of Yonkers. If the district court's decision stands, from a policy perspective, will encourage, will discourage doctors employed by the State to report abuse of patients because abuse of patients always concerns their treatment. And if that speech is not protected, they will no longer make those reports. So if a doctor reports an abuse by a correctional officer, it's no different than a doctor reporting an abuse sponsored by the employer, a medical care abuse. So Dr. Salvana cannot be compelled to do that. He cannot be compelled to mistreat his patients. And my time is up. Thank you very much.